210 A.2d 605.

CASTLE CONSTRUCTION COMPANY *vs.* LOUIS I. FERREIRA *et ux.*

MAY 26, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

PAOLINO, J. This is a bill in equity for reformation of a deed on the ground of mutual mistake. After a hearing in the superior court on bill, answer, and proof, a final decree was entered denying and dismissing the bill. The cause is here on the complainant's appeal from such decree.

On January 12, 1959, complainant by deed conveyed to respondents two lots of land in the town of Bristol. The deed contains the following sewer clause, so called:

"Said premises are conveyed together with the appurtenant right to use the present sewer system, but subject to the obligation of the grantees, their heirs and assigns, to pay the grantor, its successors and assigns, their proportional share of the cost of operating and maintaining said present sewer system serving said premises. It is hereby understood. however, that except as hereinafter provided the minimum cost shall be $1.00 per week and the maximum cost shall not exceed $2.00 per week payable quarterly to the grantor. its successors and assigns, as owner and operator of said sewer system, the amount payable each quarter to be determined by the grantor, its successors and assigns, provided nevertheless that the minimum charge may be increased only upon a sewer assessment levy or tax being made by the Town of Bristol against the grantor, its successors and assigns, in which case the grantees, their heirs and assigns, shall be obligated to pay their proportional share to be determined by the grantor, its successors and assigns, of said additional tax levy or assessment in addition to the above."

In paragraph 3 of the bill complainant alleges that the parties intended the sewer clause to read as follows:

"Said premises are conveyed together with the appurtenant right to use the present sewer system, but

subject to the obligation of the grantees, their heirs and assigns, to pay the grantors, their heirs and assigns, their proportional share of the cost of operating and maintaining said present sewer system servicing said premises. It is hereby understood, however, that except as hereinafter provided, the minimum cost shall be $1.00 per week, and the maximum cost shall not exceed $2.00 per week, payable quarterly to the grantor, its successors and assigns, as owner and operator of said sewer system, the amount payable each quarter to be determined by the grantor. its successors and assigns. Provided nevertheless, that the *maximum charge* may be increased only upon a sewer assessment, levy or tax being made by the Town of Bristol against the grantor, its successors and assigns, in which case the grantees, their heirs and assigns shall be obligated to pay their proportional share (to be determined by the grantor, its successors or assigns), of said additional tax, levy or assessment, in addition to the above." (italics ours)

In paragraph 4 complainant alleges that the deed was prepared by the Danielson Federal Savings and Loan Association, hereinafter referred to as the bank, as agent for both the parties thereto and that the bank's scrivener committed an unauthorized alteration in the preparation of the deed in that the words "minimum charge" were used instead of the correct words "maximum charge" in the last sentence of the sewer clause. In paragraph 5 complainant alleges that the parties to the deed were not aware of such alteration at the time of the execution of the deed and that consequently the deed as executed does not conform to the intentions of both parties thereto. The complainant prays that the deed be reformed so that the sewer clause contains the words "maximum charge" in lieu of the words "minimum charge."

The respondents filed an answer denying the allegations contained in paragraphs 3, 4 and 5 of the bill of complaint.

At the hearing in the superior court an attorney for the

bank testified that he prepared the deed in question and that his secretary actually made out the deed; that he received the sewer clause in its original typewritten form with the words "maximum charge" included therein; that he received directions to insert such sewer clause in the deed; that complainant, to his knowledge, had nothing to do with the change; and that the bank acted as escrowee at the closing and the deed was presented for execution and delivery at that time.

Mary Dolloff, secretary to the attorney for the bank, testified that she changed the word "maximum" to "minimum" in the sewer clause on oral directions from an officer of the bank.

Mr. Nino Palazini, president of complainant corporation, testified that the bank's attorney drew up the deed; that prior to the closing he, Palazini, showed and explained the original sewer clause to respondents; that complainant had no knowledge of the altered sewer clause; and that complainant had neither requested the alteration nor ratified the same. Mr. Palazini further testified that he discovered the error from an article in the Providence Journal stating that the town solicitor had come across it while title searching.

Mr. Louis Ferreira testified that he at no time had any conversation with Mr. Palazini regarding the sewer clause being put into the deed. But he did testify that Mr. Palazini told him that there would be a sewer charge of $1 per week and that it would remain so until such time as the town decided to run sewers where they could connect with it. Neither party examined the deed at the closing. Mr. Ferreira admitted receiving a letter in April 1962 from the bank stating that "Due to a typographical error in the preparation of your deed the words 'minimum charge' were used instead of the correct words 'maximum charge.'" Mr. Ferreira admitted that he did not respond to that letter.

Mrs. Ferreira also testified that Mr. Palazini told them the sewer charge would be $1 a week.

Mrs. Palazini, an officer of complainant corporation, testified in direct examination that her husband told respondents that if the town took over the sewers, the charge would be more than $1 a week, but would not exceed $2 a week. She also testified that she showed the sewer clause to Mr. Ferreira more than once and that the maximum was discussed. In cross-examination, after affirming her previous testimony about what her husband had told Mr. Ferreira relative to the sewer charges, she stated that they were "just quoting the language in the clause" and admitted that the language in the sewer clause stated that it would not exceed $2 a week.

The decision of the trial justice contains a careful review of the evidence and the law applicable thereto. He states that Mr. and Mrs. Ferreira testified in a convincing manner that the sewer clause as inserted in the deed which was given to them is in accordance with what they expected; that Mrs. Palazini's testimony seems to be more in accord with respondents' version than with complainant's; that as the deed is drawn, there is nothing vague or ambiguous about the sewer clause; and that the sewer clause as drawn makes sense. With respect to the letter received by respondents from the bank approximately three years and three months after delivery of the deed, the trial justice held that there was no duty on the part of Mr. Ferreira to do anything.

In reviewing the applicable law the trial justice relied heavily on *Dimond* v. *Barlow*, 82 R. I. 399, and *Vanderford* v. *Kettelle*, 75 R. I. 130, two landmark cases dealing with bills in equity for reformation of deeds on the ground of mutual mistake. After referring to pertinent portions of the opinions in those cases dealing with the quantum and quality of evidence necessary to warrant reformation, he

concluded that complainant had not sustained the burden of proof required in a case such as this. He indicated clearly that he relied upon the credibility of both respondents and that he could not say that the weight of the evidence was such as to clearly convince him, without hesitancy, of the truth of the facts alleged by complainant. On the basis of such findings, he entered a decree denying and dismissing the bill.

The complainant's single reason of appeal alleges that the decree is against the law. It argues that the sewer clause in the deed does not make sense; that the trial justice erred in ruling that upon receipt of the letter from the bank Mr. Ferreira was under no duty to do anything; and that there was a mutual mistake both as a matter of fact and as a matter of law. The complainant further argues that the bank acted as agent for both parties in the preparation of the deed; that neither party knew of the alteration of the sewer clause; and that in the circumstances the bank's mistake was a mutual mistake between the parties as a matter of law. We do not agree with complainant's contentions. In our opinion the decree is not in error.

The trial justice found, on the basis of credibility, that there was no mistake made on the part of respondents. This finding is supported by the credible evidence and will not be disturbed by us. In the circumstances the testimony of the bank's attorney that the sewer clause was changed by his secretary on instructions from one of the bank's employees, without the knowledge of complainant, is not material in the determination of the ultimate issue of whether there was a mutual mistake, without which there can be no reformation.

The facts in this case present no novel question of law. The law governing the principal issue raised by complainant, namely, whether there should be a reformation of the deed on the ground of mutual mistake, has been so clearly

stated in *Dimond* v. *Barlow, supra,* and *Vanderford* v. *Kettelle, supra,* that a restatement thereof here would be mere repetition.  Suffice it to say that in the case at bar the trial justice concluded that complainant did not meet the test laid down in *Vanderford* v. *Kettelle; supra,* at page 142, where the court said:

> "In order to prevail in this class of cases it is well settled that the complainant must prove a mutual mistake by clear and convincing evidence, meaning thereby that the evidence should be such that the mind has no difficulty in reaching a point of decision. In cases for reformation it is the duty of the court to scrutinize the evidence and 'proceed with great caution upon evidence resting in parol.' *Allen* v. *Brown,* 6 R. I. 386, 397.  To warrant reformation the credibility of the witnesses and the weight of the evidence must be such as clearly to convince the court without hesitancy of the truth of the precise facts in issue."

The basic issue in this case was one of fact.  The trial justice found that the complainant's evidence that the deed as written was the mistake of both parties was not unequivocal, clear and convincing and therefore that the complainant failed to sustain its burden of proof in the premises. The trial justice based his conclusion, as he expressly stated, on credibility.  It is well settled that the findings of a trial justice sitting in equity will not be disturbed by this court on an appeal unless shown to be clearly wrong.  *Cianciarulo* v. *Tarro,* 92 R. I. 352.  The burden is on an appellant to establish that the trial justice was clearly wrong in that he either overlooked or misconceived material evidence on this issue. *Finocchiaro* v. *Francescone,* 97 R. I. 371, 198 A.2d 37.  In our opinion the complainant has not sustained that burden in the instant case.  After careful consideration we cannot say that the findings of the trial justice are clearly wrong or that his decision or the decree predicated thereon is in error.

710

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Pontarelli & Berberian, Aram K. Berberian,* for complainant.

*Anthony R. Berretto,* for respondents.