238 A.2d 621.

MARY V. MURPHY *vs.* DIRECTOR OF PUBLIC WORKS FOR THE STATE OF RHODE ISLAND.

FEBRUARY 20, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This petition for assessment of damages by a jury was brought under the provisions of G. L. 1956, title 37, chap. 6, as amended. The plaintiff waived a trial by jury[1] and sometime after the petition was brought, the defendant was allowed to file an answer and counterclaim. The plaintiff filed an answer to the defendant's counterclaim and when the pleadings were closed the case was heard by a justice of the superior court sitting without a jury. He rendered a written decision in favor of the plaintiff, on the basis of which a judgment was entered denying the defendant's counterclaim and awarding the plaintiff damages in the sum of $46,500 plus interest from the date of condemnation, as well as costs. The case is before us on the defendant's appeal from such judgment.

## THE CONDEMNATION

We note at the outset that the taking involved in this case is the same as that which was before us only recently in *Sullivan* v. *Marcello*, 100 R. I. 241, 214 A.2d 181. The documents admitted in evidence in *Sullivan, supra*, were all introduced in evidence in the case at bar by stipulation. On or about January 28, 1964, defendant, pursuant to the provisions of G. L. 1956, title 37, chap. 6, and title 24, chap. 10, filed condemnation documents describing the property which was being condemned together with a statement that the property therein described was being condemned in fee simple for highway and freeway purposes. The taking included the George M. Cohan Boulevard, a public highway in the city of Providence, hereinafter referred to as the boulevard. The statement of taking describes by metes and bounds all of the boulevard up to the northerly curbline thereof. On May 15, 1964, defendant filed amended documents of taking, adding to the original documents a description of all easements in the boulevard and a statement that

---

[1]Compare *Smith* v. *Department of Public Works*, 103 R. I. 268, 237 A.2d 335.

such easements were taken, including plaintiff's easement in and to the boulevard; notice thereof was given to plaintiff and others abutting on the northerly side of the boulevard. It is undisputed that no offer of compensation was ever made to plaintiff by defendant.

### PLAINTIFF'S REAL ESTATE

The plaintiff's real estate abuts the northerly line of the boulevard. The property consisted of a 6,000-square-foot parcel of land with two buildings on it; one was a two-story building with a furniture store on the ground floor and professional offices above; the other was a three-tenement house attached to the store building. The plaintiff's property is only a short distance from the property involved in *Sullivan, supra.* It fronts only on the boulevard, being situated approximately in the center of the block, with but one abutter on each side between it and the two side streets. Similarly, behind or to the north, there is one abutter between plaintiff's property and the street to the north of said abutter's property. Although the condemnation included the boulevard up to plaintiff's lot line, it is admitted that no actual part of her land was taken. But the condemnation left her property without access to any public highway, since it bordered on no other street.

The plaintiff based her claim for damages on the ground that the taking of the boulevard deprived her property of all access to the boulevard and left it without access to any public highway. The narrow question presented for determination by the trial justice related to the damages, if any, suffered by plaintiff's property as a result of its loss of access to the boulevard.

At the commencement of the trial, the trial justice granted defendant's motion to file an answer and a counterclaim. The counterclaim alleges that if the trial justice should enter a decision awarding damages to plaintiff plus interest from January 20, 1964, plaintiff should pay to defendant a

reasonable amount for use and occupancy of the premises from that date to the date of the payment of damages which may be awarded plaintiff. The plaintiff interposed no objections to the filing of the counterclaim, but reserved the right to object to the same upon the merits and expressly stated that she would challenge the constitutionality of the pertinent portion of G. L. 1956, §37-6-23, as amended, upon which defendant relied. In reply to defendant's counterclaim, plaintiff filed an answer denying defendant's right to the alleged counterclaim on the grounds that (1) there was no authority for the payment of rent for use and occupation of a public highway and (2) that defendant at no time acquired title to the premises owned by plaintiff.

No evidence was introduced relative to the alleged value of plaintiff's use and occupation of the highway. The plaintiff's real estate expert, Paul W. Carter, testified that in his opinion the value of plaintiff's property before the taking was $64,500; that he considered access to the boulevard totally eliminated by the taking, thereby landlocking plaintiff's property; and that plaintiff's property had been reduced in value 75 per cent by loss of access, making the value after taking $16,400, for a difference of $48,100, the amount of damage which he estimated to be present.

The defendant's real estate expert, Ralph A. Pari, testified that in his opinion the value of the property prior to condemnation was $60,000; that, assuming an actual loss of all access, it had lost 75 per cent of its value as a result of the taking, or a total of $45,000, the figure at which he put the damage.

During the course of the trial defendant attempted to introduce certain evidence to establish that, at the time of the taking, plans were in existence and a contract had been let for the construction of a frontage road upon a portion of the boulevard and that the existence of such plans for a frontage road would affect the damages suffered by plaintiff.

The trial justice excluded this evidence on the authority of our decision in *Sullivan, supra.* The defendant then made offers of proof under oath as to the testimony excluded by the trial justice.

After the hearing, the trial justice rendered a written decision in which he carefully reviewed the evidence and examined in depth the law applicable to the issues raised by the parties. He commented favorably upon the testimony offered by the two real estate experts and on the basis of their testimony found that the damage suffered by plaintiff as the result of the loss of access from her property to the abutting highway was $46,500. In so doing, he made it clear that he was relying on our decision in *Sullivan, supra.* He ruled that plaintiff was entitled to interest on the award from the date of condemnation until the date of payment and that defendant was not entitled to anything on his counterclaim for use and occupancy because he had not complied with the statutory conditions precedent to the charging of rent for such purpose. Accordingly, he denied the counterclaim. The award was made subject to any adjustments which might possibly exist. A judgment in accordance with his decision was entered.

The questions raised by this appeal relate (1) to the evidentiary rulings by the trial justice excluding testimony pertaining to an intention to construct a frontage road abutting plaintiff's property, (2) to the question of plaintiff's entitlement to interest and (3) to defendant's counterclaim for use and occupancy of the highway. The defendant has briefed and argued these questions under three main points and, for convenience, we shall treat them in like manner.

### Point I

We consider first defendant's contention that the trial justice erred in excluding evidence of plans for a frontage road. By his offer of proof defendant proposed to show that the plans for a frontage road on the north side of the boule-

vard originated with the earliest thinking in connection with this project; that the frontage road was shown on the exhibit plans at the public hearing prior to condemnation; that the plans called for the connection of this frontage road with the city's highway system and with Route 195, although this would be admittedly somewhat circuitous; that the plans for the construction contract incorporating the frontage road were started in the public works department long before it reached the public hearing stage; and that these would be available to any interested person.

In excluding such evidence the trial justice relied on our decision in *Sullivan, supra,* at 254, 214 A.2d at 188, and referred specifically to the following language:

> "In short, in cases like this if compensation is to be just it must be measured by what the condemnor can do and not by what he intends to do, it being the rule that the damages are to be assessed on the most injurious method of construction that is reasonably possible. * * * If as of the time of condemnation the condemnor has the power, even though not the intention, to destroy a right of access, the condemnee's damages are to be determined as if the right were destroyed. To give a condemnee less would be to deny him the right guaranteed to him by the constitution."

In his brief, defendant concedes that a condemnee does not have to depend on the good will of the sovereign to give him access not guaranteed him at the time of taking, and that mere promises by the condemnor cannot affect his right to damages for loss of access. He argues, however, that definite plans, as distinguished from mere statements of intention, should be admitted for consideration on the amount of damages, particularly where they were available at the time of condemnation. In view of our decision in *Sullivan, supra,* there is no merit in defendant's contention that definite plans should be treated differently than mere statements of intention.

The condemnation documents in law completely de-

stroyed plaintiff's right of access to the boulevard. As the court pointed out in *Sullivan, supra,* at 251, 214 A.2d at 187:

> "* * * they contain no stipulation obligating the state to construct a frontage road, nor any provision limiting the state's statutory right to use for any of the permitted purposes land in excess of or in addition to that required for actual freeway construction."

In the circumstances, notwithstanding the offer of proof of the letting of a contract to construct a frontage road and the existence, at the time of the taking, of the proffered plans,

> "* * * the mandate of just compensation requires payment as if the right of access were to be obliterated."

*Sullivan, supra,* at 253, 214 A.2d at 188. Whatever the law may be elsewhere, in view of our decision in *Sullivan,* the trial justice did not err in excluding the evidence in question.

## POINT II

The defendant's purpose in offering the evidence discussed under point I was to form a basis for an opinion by his real estate expert as to the value of plaintiff's property after the taking based on the proffered plans for the construction of a frontage road. Under point II defendant has briefed and argued his contentions that the trial justice erred in excluding evidence of value after taking based on a frontage road. In view of our conclusion in point I, it necessarily follows that the trial justice did not err in excluding evidence of value after taking based on a frontage road.

## POINT III

We come now to defendant's contention that the trial justice erred in awarding plaintiff interest and in denying the counterclaim for use and occupancy.

We consider first the question whether plaintiff is entitled to interest upon the amount of damages awarded. The de-

fendant relies on G. L. 1956, §37-6-23, as amended, which provides, in pertinent part, as follows:

> "Payment of judgment.—Upon recovery of final judgment, execution shall be issued therefor and shall be forthwith paid by the general treasurer out of any funds appropriated and available therefor, but the verdict and the judgment entered thereon shall not include any item for interest for any period during which such land or other real property was actually occupied or enjoyed by the petitioner * * *."

The defendant contends here, as he did before the trial justice, that §37-6-23 applies to the facts of this case, even though the condemnation involves the taking of a right of access rather than the classic case where the condemnation involves the taking of the premises of a landowner. The plaintiff, on the contrary, argues that the situation contemplated by the §37-6-23 is the ordinary one in which a parcel of land is taken and the condemnee permitted to remain on the premises for some period following the condemnation. She argues further that in the latter situation—assuming the constitutionality of the statute—the condemnee would have an option to vacate and collect interest or to remain and waive the same. She argues that where the taking involved is an access right in a highway and the abutting real estate was not condemned, there is no "possession" in the ordinary sense; that the condemnee has no option with respect to the premises taken, since whether the highway remains open or closed is a determination to be made exclusively by the condemnor. We believe there is merit in plaintiff's argument.

The law is well settled that where a statute is susceptible of two reasonable constructions, one of which would raise a serious question of its constitutionality and the other which would not, the latter construction should be adopted. *Allen* v. *Rhode Island State Board of Veterinarians*, 72 R. I. 372, 379, 52 A.2d 131, 134; *Opinion to Governor*, 75 R. I. 54,

63, 63 A.2d 724, 730. The trial justice applied this principle in passing on the meaning of §37-6-23 and concluded that it did not govern the facts in the case at bar. In passing on this question he used the following language which, in our judgment, sets forth the meaning of §37-6-23 correctly and with clarity:

"* * * In the classic case the State owns the property and grants to the former owner the right to demand interest or to accept continued possession in its place. The former owner in substance chooses to become a sort of tenant of the State in the State's property, and to do so at the cost of forfeiting any claim for interest, or perhaps more properly choosing to accept possession in lieu of interest.

"The situation in the instant case is quite different however. Here title to the property of the plaintiff has never been taken. It is still hers and she still has an unqualified right to possession of her own property. She is making no election between retaining possession of the property and demanding interest. She has no choice. She cannot give up the possession of the property to the State, or at least there is no basis upon which that could be done except as a gift to the sovereign. Accordingly there is nothing she needs to do to put her in a position where she can demand the legal interest to which she is entitled as a result of the damages which she has sustained. Since a construction of a statute will always be taken which will render it constitutional, if such a choice is available, *Section 37-6-23* must be construed to define 'such land or other real property' the possession of which deprives one of a right to interest as being property belonging to the State as a result of condemnation and not property still belonging to the person legally entitled to damages from the State as a result of a condemnation of a right of access to that property. Otherwise the statute would seem to be clearly unconstitutional."

We find no error in the trial justice's award of interest from the date of condemnation to the date of payment.

This brings us to a consideration of defendant's counterclaim. He argues that if for any reason §37-6-23 is not applicable and plaintiff is awarded interest, then the state is entitled to rent for use and occupation of the boulevard from the date of taking to the date of entry into possession. The defendant argues that although plaintiff's right of access was destroyed, she has in fact used the highway since the date of condemnation and therefore should be charged a rental for such use.

The trial justice denied the counterclaim on the ground that the state failed to comply with required statutory procedure and on the further ground that no implied promise to pay could be found.

We find no error in the trial justice's decision on this issue. As he pointed out, the state had the authority under G. L. 1956, §37-7-8, to enter into an agreement with plaintiff for a grant to her of an easement of access, but only by observing the procedures therein prescribed. Section 37-7-8 reads as follows:

> "Grant of easements and rights-of-way over acquired lands.—Whenever in the opinion of the acquiring authority an easement or right-of-way may be granted in land owned or held by the state without thereby jeopardizing the interests of the state, and the granting of such easement or right-of-way will be for the public good, the acquiring authority, with the approval of the state properties committee, is hereby authorized and empowered to grant such easement or right-of-way by proper instrument, approved as to substance by the director of administration and as to form by the attorney-general, for such consideration, and in such manner and upon such terms and conditions as may in the judgment of the state purchasing agent be most advantageous to the public interest."

Under the statute the state could have provided for the payment of rental by plaintiff for such easement of access.

Having failed to comply with the required procedures, the state cannot now assert a claim for rental under §37-7-8.

Nor is there any basis for an implied promise to pay sufficient to justify an action for use and occupation. With respect to the right of access, the state did not grant anything to the plaintiff. Although the plaintiff has in fact used the highway since the date of condemnation, her legal right of access has been taken by the state and therefore she has no right whatever to any easement. Finally, even if it be admitted that the highway has in fact been available for the plaintiff's use since the date of condemnation, there is no basis for an implied promise to pay. It is obvious that the highway was available for the general public as well and, in the circumstances, we fail to see how the defendant can justify charging the plaintiff for use and occupation on the theory of unjust enrichment.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Roberts & McMahon, William F. McMahon,* (for plaintiff-appellee).

*Arthur N. Votolato, Jr., Alexander G. Teitz,* Office of Special Counsel, (for defendant-appellant).