MARY J. JOHNSTON *vs*. OLD COLONY RAILROAD COMPANY.

The owner of an estate purchased with reference to a recorded plat having an adjoining street marked out thereon, has an interest in such street notwithstanding it has been made a public highway, as the owner of a right of way therein, which underlies the public right in the street, and which would remain as appurtenant to his lot, if the street should be abandoned as a highway. When, therefore, such right of way is taken by permanently closing the street at one end under condemnation proceedings, the lot owner is entitled to compensation therefor.

In such a case, the owner is not limited to the recovery of merely nominal damages, but is entitled to damages to be measured by the difference between the market values of the estate before and after the condemnation so far as affected thereby.

Evidence as to the business done on the premises for the purpose of showing what they were adapted for having been introduced without objection, and the jury charged not to estimate the damage to the plaintiff's business, the defendant has no ground for a new trial because of the admission of such evidence.

The plaintiff's claim for damages is for the practical obliteration of a private or platted street. An element of the value of the estate being its accessibility by means of the street which led into public thoroughfares beyond the limits of the plat, the cutting off of the approach to her estate by closing up one end of the street, thereby rendering the same less travelled, takes that element of value from the estate.

Hence, evidence as to the amount of travel on the street before and after the condemnation is admissible for the purpose of showing the extent to which the estate was isolated by closing up the street.

In view of the testimony as to the value of the estate before the condemnation, the price paid for it, and the opinion of experts as to the diminution in value of the estate in consequence of the condemnation which is conflicting, and considering that the jury took a view, the damages do not appear to be excessive.

DEFENDANT'S petition for a new trial.

*July 6, 1894.*    ROGERS, J.    By an act of the General Assembly passed July 22, 1891, the Old Colony Railroad Company was authorized to take for railroad purposes certain

land in the city of Providence including a portion of Webster street near the plaintiff's premises, the condemnation to be made under and in conformity with the provisions of the charter of the Boston and Providence Railroad and Transportation Company.

The plaintiff's claim was rejected by the commissioners whereupon she asked for a jury trial as provided for in the charter. Upon trial in the Court of Common Pleas before a jury she recovered a verdict of $600, and the defendant now petitions for a new trial, alleging errors in the rulings of the presiding justice, that the verdict was against the law and the evidence, and that the damages were excessive.

The taking of Webster street by the defendant consisted in closing it up bodily so as to prevent any passing whatsoever over it, whereby the plaintiff's house was thrown into a *cul de sac* leading off at Ashburton street, whereas before that it was upon an open, much frequented way or street. The plaintiff owns a house and lot on the southerly side of Webster street about seventy-one feet easterly of the part of the street taken, and about eighty-four feet westerly from Ashburton street, the nearest open street to her premises. Webster street, before it was closed up, at the time of the condemnation was a public highway with considerable travel over it, and though the City Council of Providence before the condemnation, had declared that part of Webster street taken, to be useless, and that it had been abandoned as a highway, yet the plaintiff had appealed from the order of the Council. The plaintiff's estate forms a part of the Philip W. Martin Plat, which was duly recorded in the Providence Land Records, to which plat her title deeds referred, and upon which plat is shown and laid out a street, which has since been established as a public street under the name of Webster street. The estate, then, a part of which, viz., a right of way, has been taken by the defendant, is a lot of land on the Philip W. Martin Plat, appurtenant to which is a way or street laid out on said plat, superimposed upon which way is a public highway, which appurtenant way would remain to the plaintiff should Webster street ever be

abandoned as a highway. For the damage done to her by taking her interest in this way or street under her deed the plaintiff claims damage. The charter of said Boston and Providence Railroad and Transportation Company, section 1, provides that all damages that may be occasioned to any person by the taking of land or material for laying out and constructing its railroad shall be paid for by said corporation in manner thereinafter provided, which is the manner followed in the proceedings in this case.

Did the plaintiff have such an interest in the way now known as Webster street that said street cannot be taken and closed by the defendant without compensation to her? We are of the opinion that she did have such an interest, and no question has been made but that, if she did have such an interest, it was taken within the constitutional and statutory meaning of the word *take.* Not only an absolute fee in land, but a right of way over land, or any easement or right connected with it may be taken by eminent domain, and, of course, if so taken, must be paid for. *Pratt* v. *Buffalo City Railway Co.*, 19 Hun., 30; *Common Council of Indianapolis* v. *Croas*, 7 Ind. 9 ; *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200 ; *Gerhard* v. *Bridge Commissioners*, 15 R. I. 334 ; 6 Amer. & Eng. Encyc. Law, 531, 542.

The defendant contends that when such private way has been taken for highway purposes, and condemnation of a portion of said highway is made for railroad purposes, the reversionary interest of such lot owner in said way is not of such appreciable value as to require compensation, or at most any more than nominal damages.

In our opinion the amount of damages in each case must be determined by the circumstances attending it. Those who suffer have their actions, and in each particular case the jury must determine the amount of damages. The reversionary interest in Webster street, as the defendant terms the private right of way, in contradistinction from the right of the public in a public highway, is what prevents the State even, from closing it up without compensation to the plaintiff, and if the approach to plaintiff's estate over Webster street is

shown to the jury to be valuable, theirs is the duty of assessing the damage. The argument that the value of the plaintiff's right of way over Webster street was as if she had to stop at the limit of the Philip W. Martin Plat and could proceed no further, is erroneous, for her right of way over Webster street and the streets on said plat, led to public highways which could be travelled over to points beyond the plat.

The difference between the market value of plaintiff's estate before and after the condemnation, so far as directly affected thereby, is unquestionably the proper measure of damages. If the property has been sold since the condemnation, that would doubtless furnish the best evidence as to its value ; but when, as in this case, it has not been sold, then other evidence of the reduced value must be resorted to, and whatever lessens its desirableness and the price that purchasers would pay for it,—causes directly attributable to the condemnation and closing up of plaintiff's private way—would be proper evidence.

The plaintiff testified that she paid $2500 for the estate ten years ago, at which sum she valued it before the condemnation ; the only other evidence as to the lump value of the estate before the condemnation was that put in by the defendant that its assessed tax value was $856. The house consisted of a brick basement or first floor used as a shop, and a story and a half frame building above it containing two tenements, one of which she occupied herself, and the other she let. The shop had been used as a liquor store before plaintiff bought the estate, as well as afterwards and until her husband's death shortly before the condemnation. She took out no license after her husband's death and did not attempt to use it herself as a liquor store and as she could not let it, she used it as a store for knick-knacks, selling little or nothing. Evidence was put in as to the diminution of rental value ; also as to what the store was used for before condemnation and since, as tending to show what it was adapted for and to aid in showing what the rental value would now be ; and evidence was also put in as to the amount of travel over Webster street. The jury took a view, and experts were

called on both sides as to the effect of the condemnation on the value of the premises, several of the defendant's experts testifying that in their opinion the market value was not much lessened, while one of them testified that in his opinion it was injured to the extent of five or ten per cent. On the other hand one of the plaintiff's experts gave it as his opinion that the value was reduced one half, and the other that it was reduced at least one quarter of its value before the condemnation.

Though the defendant did not object to the admission of evidence showing the business that had been done on the plaintiff's premises, yet it now claims that the admission of such evidence is ground for new trial. We do not understand that the difference in the profit of business before and after the closing of Webster street was claimed by the plaintiff as the measure, or as an item of damage, for the same business was not carried on nor attempted to be carried on after the closing of the street, so no comparison was or could be, or was attempted to be instituted. The only purpose of such evidence was to show what the premises were adapted for, and as no objection was made to its admission, and moreover as the presiding justice, in compliance with the defendant's request, charged the jury that they were not to estimate the damages to the trade or business of the plaintiff because they were too remote to be a subject of damages and because they depend on contingencies too uncertain and speculative to be allowed, we see no just ground for complaint by the defendant in that regard.

Evidence was offered by the plaintiff without objection that there was a travel or traffic of business over Webster street before the condemnation of one thousand or twelve hundred foot passengers, and of at least one hundred teams a day, and that the stopping up of Webster street stopped all this. When however this was used as one of the bases of a hypothetical question to experts the defendant objected, the objection being that it is assuming that damages can be assessed for the interruption of traffic on a street as a street,

whereas the damages should be assessed in reference to the injury to a private right of way.

When the plaintiff bought her estate on the Martin Plat she bought the right to have what is delineated thereon as Webster street, kept open as a street. This was as much a part of her purchase as the land on which her house stood. The right she bought had no such limitation that only she herself and her immediate family might pass over it, but it was the right that her lot should be situated on such a way as was delineated on the plat, and as broadly as if it were a street. It might not be a public highway, but she had the right that the public should be allowed to travel there as if it were a street. It is common knowledge that people are every day buying lots on plats and building expensive houses on platted streets and it is not to be supposed that all they have a right to demand is the right for themselves, solitary and alone, to use such streets. If the city should superimpose upon that platted street a public highway, the underlying right of the plaintiff in the platted street is not taken away. The city in establishing it as a public highway only gets a public right of way there and the right to repair and regulate it. The right of the public to use it as a *public* highway is abstract rather than practical. If the city should abandon it as a public highway, the public would still continue to use it as a platted street. It seems to us that if the question of travel is admissible at all it does not rest on the distinction as to whether this is a public highway or a platted street so far as the plaintiff is concerned in this case. If all the right the plaintiff had in Webster street had been merely the right that one of the public has in a public highway, then perhaps the principle indicated in *Gerhard* v. *Bridge Commissioners*, 15 R. I. 334, as to owners of estates on public highways might apply. In *Proprietors of Locks and Canals* v. *Nashua & Lowell Railroad Corporation*, 10 Cush. 385, 391, the Supreme Court of Massachusetts, in considering the question whether the owners of an estate on a public highway which was crossed some distance from said estate but between it and the thickly settled part of the city of Lowell,

by a railroad which under authority of the State had raised the grade of the highway making it less desirable for travel, and thereby diverting travel and traffic from their estate, could recover damage therefor, used this language as to the law regulating the recovery of damages, viz.: "We propose, in case there should be another trial, that it be stated somewhat in this form: That all direct damage to real estate, by passing over it, or part of it, or which affects the estate directly, though it does not pass over it, as by a deep cut or high embankment, so near lands or buildings as to prevent or diminish the use of them; . . . . . by obliterating or obstructing private ways leading to houses or buildings. These, and perhaps many others of like kind, which particular circumstances may present, we think, are proper subjects for the assessment of damages. But that no damage can be assessed for losses arising directly or indirectly from the diversion of travel; the loss of custom to turnpikes, canals, bridges, taverns, coach companies and the like; nor for the inconveniences which the community may suffer in common, from a somewhat less convenient and beneficial use of public and private ways, from the rapid and dangerous crossings of the public highways, arising from the usual and ordinary action of railroads, and railroad trains, and their natural incidents." We are not quite sure that we understand what the damages caused by obliterating or obstructing private ways leading to houses or buildings consist in, as construed by the Massachusetts Supreme Court, nor whether it is intended to draw a distinction between the injury or inconvenience the community may suffer in common, and those the owner of a private way may suffer. As this case, or rather the text book referring to it, was the sole authority furnished us by the defendant in support of its contention, we advert to it at length. Unquestionably, the establishment of a highway parallel and near to another highway, or to a turnpike and thereby diverting travel would cause no actionable damage; and so likewise a railroad's crossing a public highway and making it somewhat less convenient, and so also in many other cases of diversion of

travel, and of inconvenience in using highways.    In the case at bar it will be noted that it was not for a public highway, nor for the inconveniences which the community may suffer in common that the damage was claimed, but for what we should consider a practical destroying and obliterating of a platted. or private street.    If the travel by others, valuable to the owner in the platted street, can be diverted without legal damage, then why not the travel of the owner himself; and if a railroad can block up one side without liability for damage why cannot another railroad block up the other side with equal exemption from liability and thus leave a man's estate bottled or bagged up without paying damages ?  There can be no doubt that this lopping off of the approach to one's estate takes value from it, in fact such approach is the very key of its value.    The travel past estates in cities is what in large measure constitutes both their selling and their renting value.    If one pays his money directly for such approaches, as he does when he buys on a plat, approaches that he relies on to be travelled over and make his estate central, why should a railroad appropriate such approaches and deprive him of the right of its becoming central without also paying for it ?   It is practically robbing one to enrich another, for though a railroad corporation is a public corporation so far as to entitle it to the right of eminent domain in its behalf, the shareholders are individuals who are enriched by every such favor granted to it.    It is common knowledge that the more centrally located an estate is, the more valuable it is, and that ordinarily when an estate is removed by one single act, and in a single day, off of a much travelled way, and isolated and cooped up in a mere *cul de sac*, more or less value is thereby taken out of it.    Such damage in such a case as the one at bar does not seem to us indirect or remote, but direct and proximate.    It is difficult to conceive what constitutes injury to an estate if lopping off its approaches which one has bought does not.

The case at bar seems to us an extreme. one, and if the elements of damage are such as may mislead a jury, then the protection against excessive damages must be found in the

power of the court in some of the modes allowed by law to revise or set aside the verdicts of juries. In this case the damages do not seem to us excessive, nor the verdict against the weight of the evidence. Defendant's petition for new trial denied and dismissed, with costs.

*Edwin D. McGuinness & John Doran*, for plaintiff.
*Henry W. Hayes*, for defendant.