328 A.2d 107.
ANTHONY J. NARCISO *et al. vs.*
STATE OF RHODE ISLAND *et al.*

NOVEMBER 22, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a petition under the provisions of G. L. 1956 (1969 Reenactment) ch. 6 of tit. 37, and G. L. 1956 (1968 Reenactment) ch. 10 of tit. 24, for the assessment of damages resulting from a taking for highway purposes of a portion of the petitioners' land by the respondent, and for severance damages to the remainder of said land. The case was heard before a justice of the Superior Court sitting without a jury. The only issue was that of the assessment of damages. The trial justice awarded the petitioners the sum of $44,977.10 as compensation for the portion of petitioners' land taken and severance damages to the remainder of said land. The case is before us on the respondent's appeal from the judgment entered pursuant to such award.

On May 8, 1970, the statement of the taking and the accompanying condemnation plat designated as the "Westerly By-Pass from Connecticut State Line to U. S. Route 1," was filed and recorded by respondent in the office of the Town Clerk of Westerly.

The petitioners owned property located at the corner of Brookside Drive and Nooseneck Hill Road, Route 3, in Westerly. The petitioners operated thereon a service station, automobile repair garage, and grocery store, commonly known as "Narciso Brothers", which fronted on the westerly side of Nooseneck Hill Road. The property consisted of 9,900 square feet, and the state took approximately 793 square feet located at the northeasterly corner

of the property to construct slopes for drainage from the proposed highway. This taking by respondent would have necessitated the removal and relocation of an underground gasoline storage tank and an overhead light fixture.

On October 27, 1971, a nonjury trial commenced with both parties stipulating that the petition was duly filed in proper time; the petitioners were the owners of the subject property; the land actually taken was 793 square feet; the condemnation by the state was in accordance with the statutes; and the only issue was the nature of the damages suffered by petitioners and the value of such damages.

The petitioners presented Oscar Chapman, Acting Director of the Department of Public Works of the Town of Westerly, for the purpose of identifying Sheet No. 17 of Westerly By-Pass, Plat No. 1542, which contained petitioners' land. He testified that Plan No. 7 of the map entitled "Drainage and Utilities" depicted a proposed island directly in front of the service area, a proposed center island along Nooseneck Hill Road to the north of the station, a proposed new rotary at the intersection of Nooseneck Hill Road and Upper High Street, and a proposed curbing in front and along the side of the station, none of which existed prior to May 8, 1970, the date of condemnation.

Anthony J. Narciso, one of the petitioners, testified that the area from which the land was taken was used as a gasoline service station, as a repair garage, and for retail sales of automobile accessories and groceries. The property was purchased by petitioners in 1952 or 1953 and improved by them to its present condition. Mr. Narciso also testified as to the traffic patterns in the area, and stated that 25 to 30 percent of petitioners' gasoline sales were to dump trucks and over-the-road trailers that could easily be served because there was neither curbing nor

islands in front of the station area at the time of condemnation.

Russell Lenihan, a real estate agent in the Westerly area, then testified as a qualified expert in the appraisal of real estate. Using the comparable sales method, he determined the value of the property to be $128,506 before the taking. He stated that petitioners' property would suffer 75 percent severance damage because of the placement of the curbing, islands, dividers and intersection. He valued the property after the taking at $32,126.50, resulting in a loss in value of $96,379.50.

Peter A. Laudati III, testified as an expert witness for the state. Using the comparable sales method for appraisal of the land and the cost less depreciation method for the building and improvements, he valued the property at $46,750 before the taking. After taking, his valuation on the land reflected a 20 percent downward adjustment because the proposed curbing, islands, median strips, and intersection would limit the access to the subject property so that its highest and best use would no longer be as a service station but as a small business site. As a result, he set a value of $20,500 for the property after taking. This resulted in a loss in valuation of $26,150. To this, he added $850 for the cost to move and relocate a fuel storage tank and an outside electric light fixture, for a total loss in valuation of $27,000.

The trial was then recessed at the request of counsel for both parties. Conferences were held at which attempts were made to resolve the differences between the parties.

On a motion by the state to reopen, the hearing resumed March 20, 1972. Francis Perry, Supervising Engineer, State Department of Transportation, testified and introduced into evidence a composite map of the area in front of the subject property representing the changes requested

by petitioners and showing what the state could do, and also a copy of the department's plan on curb cuts allowed on state highways. Mr. Perry gave his opinion as to how the flow of traffic would be affected by the islands, medians and curb cuts. He gave his opinion as to how vehicles seeking access to the gas station would be affected.

Mr. Laudati was recalled to the stand by the state, and he testified that as a result of information obtained from Mr. Perry, he had revised his opinion of damages suffered and set the amount at $2,800.

Mr. Lenihan was recalled to the stand by petitioners and he referred to the maps and information he had obtained in making his appraisal. He said he believed traffic coming north on Route 3 could not make a left turn and enter the gas station on the subject property. He indicated, however, that the testimony of Mr. Perry did not change his opinion about the damages sustained by petitioners.

The trial justice in her decision did not consider the testimony and exhibits introduced at the hearing on March 20, 1972, limiting her consideration only to exhibits introduced at the earlier hearing which described the taking and the state's intention as of the date of condemnation. The extent of the taking is determined as of the date of taking, and the good faith of the state and the extent of what it intended to do are not material unless such intention is set forth in binding terms in the condemnation documents. *Honig* v. *Director of Pub. Works,* 106 R. I. 199, 258 A.2d 73 (1969); *Sullivan* v. *Marcello,* 100 R. I. 241, 214 A.2d 181 (1965). The procedure followed by the trial justice in rejecting the later exhibits was correct.

In determining the measure of damages, the trial justice found it significant that Mr. Lenihan's and Mr. Laudati's first appraisals were in agreement that the subject property's highest and best use after the condemna-

tion was affected by reason of the change in access created by the partial taking.

The trial justice held that petitioners proved upon a fair preponderance of the evidence that the subject property had a fair market value of $128,506 at the date of condemnation, and that by virtue of the taking it had a fair market value of $83,528.90 after the condemnation, the measure of damages therefore being $44,977.10.

The instant appeal was originally argued before us on October 2, 1973. On February 28, 1974, we ordered the case placed on the calendar for reargument and requested the parties to brief and argue the following questions: "Are the severance damages awarded by the trial justice to the plaintiffs attributable solely to the state's taking of a portion of their property? If not, is diminution in the value of the property caused by the diversion or circuity of traffic compensable when it is associated with a partial taking of one's property?" In accordance with our direction, the parties submitted supplemental briefs and we heard oral arguments on May 10, 1974.

The general rule in this state is that where, in an exercise of police power, the right of access to land abutting upon a highway is impaired or diminished, such act is not a confiscatory taking requiring compensation unless the impairment or diminution is so substantial as to leave the property owner without reasonable access to his property. *Aust* v. *Marcello,* 112 R. I. 381, 310 A.2d 758 (1973); *Allen & Reed, Inc.* v. *Presbrey,* 50 R. I. 53, 144 A. 888 (1929).

Before condemnation, petitioners had complete access to the highway. The map filed with the condemnation instrument on May 8, 1970, makes it clear that the state planned to install the following: curbing in front and along one side of the property so that petitioners would

be allowed no more than one 27-foot cut in the curb in front and one 27-foot cut in the curb along the side for ingress and egress; an island immediately in front of the station; a median divider in the highway located almost directly in front of the station; and an intersection to the immediate north of the station. The net result would be a complete rerouting of the traffic so that only those vehicles traveling south from Potter Hill Road would have unobstructed access to the station. All other traffic would have to travel by the station, go around the intersection to the north, and turn back to the south to get to the station. All egress from the station would have to be by the curb cut on Brookside Avenue which would necessitate another series of complicated turns for vehicles to resume their original direction.

The determination of whether a "substantial impairment" has been established is a question of law, while the extent of such impairment is a question of fact. *State ex rel. Dep't of Highways* v. *Linnecke*, 86 Nev. 257, 468 P.2d 8 (1970). Before damages can be assessed and awarded, there must therefore be a finding that there was a substantial impairment of access to the abutting highway.

The trial justice in her decision stated:

> "Upon that evidence which the Court considers credible, convincing and probative and the law deemed applicable, the Court finds as a fact that the subject property did suffer a loss of access at the date of condemnation which warrants the Court in according severance damages to the condemnees."

The respondent contends that the trial justice's award of $44,977.10 in damages was grossly excessive and should be reduced.

The measure of damages for the destruction or impairment of access is the difference between the market value of the property before and immediately after the destruc-

tion or impairment of access. The damages awarded the abutting landowner for destruction or impairment of access is based not upon the value of the right of access to the highway, but rather upon the difference in value of the remaining property before and after the access thereto has been destroyed or impaired. This valuation in turn is based upon the highest and best use to which the land involved might be put before and after the right of access was destroyed or impaired. *State ex rel. Morrison* v. *Thelberg,* 87 Ariz. 318, 350 P.2d 988 (1960).

The petitioners presented expert testimony through Mr. Lenihan to prove such damages. The state's expert witness, Mr. Laudati, agreed that the property's highest and best use would no longer be as a service station. The trial justice considered both the testimony of Mr. Lenihan that the property had suffered 75 percent severance damage and the testimony of Mr. Laudati that the property had suffered 20 percent severance damage, and concluded that petitioners had established by a fair preponderance of the evidence that the property had suffered 35 percent severance damage, in addition to the damages for the taking of the 793 square feet and the removal of the underground gas tank and the light fixture. She thus arrived at a total of $44,977.10 in damages.

Her findings of fact are entitled to great weight and will not be disturbed unless they are clearly wrong or she has misconceived or overlooked material evidence. *Parillo* v. *Director of Pub. Works,* 112 R. I. 427, 312 A.2d 198 (1973); *Cunningham* v. *Marcello,* 106 R. I. 400, 260 A.2d 451 (1970). Here, the trial justice found a loss of access as of the date of condemnation which she held to be compensable.

This finding was apparently based largely, if not exclusively, on the circuitous rerouting of traffic made necessary by the installation of traffic islands and medians in front

of petitioners' property. When confronted with similar situations, the majority of courts have refused to grant compensation. *People ex rel.* v. *Ayon,* 54 Cal.2d 217, 352 P.2d 519, 5 Cal.Rptr. 151 (1960); *State* v. *Ensley,* 240 Ind. 472, 164 N.E.2d 342 (1960); *Jacobson* v. *State Highway Comm'n,* 244 A.2d 419 (Me. 1968); *Painter* v. *State Dep't of Roads,* 177 Neb. 905, 131 N.W.2d 587 (1964); *State Comm'r of Transp.* v. *Monmouth Hills, Inc.,* 110 N.J. Super. 449, 266 A.2d 133 (1970); *State* v. *Fox,* 53 Wash.2d 216, 332 P.2d 943 (1958).

There is, however, a line of cases in which loss of access due to rerouting of traffic has been held to be a relevant factor in determining the loss in fair market value suffered by the property. *McRea* v. *Marion County,* 222 Ala. 511, 133 So. 278 (1931); *State ex rel. Morrison* v. *Thelberg, supra* (1960); *Riddle* v. *State Highway Comm'n,* 184 Kan. 603, 339 P.2d 301 (1959); *State Dep't of Highways* v. *Bagwell,* 255 So.2d 852 (La.App. 1971); *South Carolina State Highway Dep't* v. *Wilson,* 254 S.C. 360, 175 S.E.2d 391 (1970).

We choose to follow the majority rule that a diversion of traffic is an exercise of police power and that damages thus resulting to the landowner are not compensable. Under the majority rule the property owner has the right to reasonable access to the public streets but no property right in having his travel to his destination or the public's travel to his property be along the most direct route possible. Consequently an abutting landowner has no right to the flow of traffic past his property, and any diminution in value of the property resulting solely from a diversion of traffic is not compensable.

The trial justice therefore erred in allowing evidence as to the impact of the rerouting of traffic brought about by the installation of the proposed islands or medians on the fair value of petitioners' property.

An abutting landowner, however, is entitled to compensation for damages if his access is so substantially diminished as to leave the landowner without reasonable access to his property. *Aust* v. *Marcello; Allen & Reed, Inc.* v. *Presbrey, both supra.*

The cases of *Newman* v. *Mayor of Newport,* 73 R. I. 385, 57 A.2d 173 (1948); *Elder* v. *Mayor of Newport,* 73 R. I. 482, 57 A.2d 653 (1948), indicate that the installation of curbing may amount to a denial of reasonable access entitling the landowner to compensation. In *Elder* the court stated that the access must be reasonably suited for the permitted use of the land.

Unfortunately, the record of the instant case does not clearly indicate whether the trial justice even considered the new curbing in finding a denial of access. Ordinarily we would determine from the record whether the installation of curbing caused so substantial a diminution of access as to leave petitioners without reasonable ingress and egress to the property for its permitted and anticipated use as a gas station.

However, here there are not sufficient facts in the record to allow us to come to a conclusion on this issue, and we must therefore remand the case to the Superior Court for findings on the question of whether or not the installation of curbing amounts to a substantial denial of access and is therefore compensable. If such a finding is made, a determination should be made as to the damages suffered by the petitioners.

The respondent's appeal is sustained in part and denied in part, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a hearing in accordance with our instructions.

Mr. Justice Kelleher, concurring. Mr. Justice Holmes once said, "Government hardly could go on if to some

extent values incident to property could not be diminished without paying for every such change in the law." *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). In *Aust* v. *Marcello,* 112 R. I. 381, 310 A.2d 758 (1973), I observed that, in determining if compensation is due for the loss of the abuttor's access, we should not look to see if the state is proceeding under its police power or its power of eminent domain, but rather we should examine the record to see if the abuttor has produced the requisite evidence that would justify a finding that the government's action has substantially or materially diminished his right of access. The substantial diminution criterion is a ready and reasonable response to Justice Holmes' concern and it obviates the need for the police power/eminent domain classification process. This concurrence will hopefully demonstrate the feasibility of using this criterion to which reference was made in *Aust.*

The right of access has been described as nothing more than an easement appurtenant to the abutting land. *Sullivan* v. *Marcello,* 100 R. I. 241, 214 A.2d 181 (1965). After reading the past pronouncements of this court, I interpret "access" as meaning not only that an owner is to be afforded a reasonable opportunity to enter and leave his property through the use of the abutting public way, but also that once he arrives on the way he is then able to reach the general system of public ways. *Wolfe* v. *City of Providence,* 77 R. I. 192, 74 A.2d 843 (1950); *Newman* v. *Mayor of Newport,* 73 R. I. 385, 57 A.2d 173 (1948); *Gill* v. *Town Council,* 47 R. I. 425, 133 A. 806 (1926); *Johnston* v. *Old Colony R.R.,* 18 R. I. 642, 29 A. 594 (1894); *see also People* v. *Russell,* 48 Cal.2d 189, 309 P.2d 10 (1957); *Jordan* v. *Town of Canton,* 265 A.2d 96 (Me. 1970.)

There is a difference between one's capacity to enter and leave his property by way of the abutting highway,

and the decrease or increase in the traffic traveling on that highway. There is. no property right in the traffic flow. *Acme Theatres, Inc.* v. *State,* 26 N.Y.2d 385, 258 N.E.2d 912, 310 N.Y.S.2d 496 (1970); *Commonwealth* v. *Hession,* 430 Pa. 273, 242 A.2d 432 (1968); *State Highway Comm'r* v. *Howard,* 213 Va. 731, 195 S.E.2d 880 (1973); *Surety Savings & Loan Ass'n* v. *State,* 54 Wis.2d 438, 195 N.W.2d 464 (1972); Stoebuck, *The Property Right Of Access Versus The Power Of Eminent Domain,* 47 Tex. L. Rev. 733, 751, 764 (1969).

Although the abuttor has an easement in the public highway for purposes of access, he is not entitled to access to his land at every point on the property line adjacent to the highway. *Shaklee* v. *Board of County Comm'rs,* 176 Colo. 559, 491 P.2d 1366 (1972); *Iowa State Highway Comm'n* v. *Smith,* 248 Iowa 869, 82 N.W.2d 755 (1957); *State ex rel. Dep't of Highways* v. *Linnecke,* 86 Nev. 257, 468 P.2d 8 (1970); *Barnes* v. *North Carolina State Highway Comm'r,* 257 N. C. 507, 126 S.E.2d 732 (1962); *Wolf* v. *Commonwealth,* 422 Pa. 34, 220 A.2d 868 (1966). While the property owner is not entitled to complete access, he is entitled to reasonable access to the abutting way. Here, the installation of curbing and the driveways unquestionably involves the exercise of police power. Nevertheless, compensation may be due the petitioners if the trial justice is convinced that despite the two driveways the ability of the petitioners and their customers to enter and leave the premises has been substantially diminished. Upon remand, the trial court can determine if the two driveways, each of which connects the Narcisos' establishment with the abutting highway, provide the requisite reasonable access.

*Crandall, Longolucco, Parrilla and Lenihan, James J. Longolucco,* for petitioners.

*Stephen F. Mullen,* Chief Special Counsel, for respondents.