391 A.2d 103.

GEORGINA M. FULLER *v.* ROBERT J. RAHILL, *Director of the Department of Transportation.*

AUGUST 23, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J. This is an appeal from a Superior Court judgment in a nonjury proceeding for the assessment of damages resulting from a property condemnation. The petitioner below, Georgina M. Fuller, owner of the condemned property, was dissatisfied with the amount of damages awarded and accordingly has brought the matter before us on appeal from that award.

This case concerns the condemnation of property for the construction of an interchange at the intersection of State Route 44 and Interstate Route I-295. Interstate I-295 was originally conceived as a link in the national interstate highway system. As early as 1962, at a public hearing conducted by the Rhode Island Department of Public Works to discuss the configuration of that portion of I-295 between Johnston and Smithfield, Rhode Island residents were made aware that the route would have its southerly terminus in Rhode Island at Interstate Route I-95 in Warwick and would traverse the state in a northeasterly direction, crossing into Massachusetts and joining I-95 again near Attleboro. Proposed designs for the interchange at Route 44 were also disclosed at the hearing, although it was stressed that neither the location nor the design was finalized.

The petitioner was the owner of an improved 22-acre tract of land located on the southerly side of Route 44, with portions in the towns of Smithfield and Johnston. The only access to the property was from two points on Route 44, a 10-foot strip leading to the westerly half of the property and a 30-foot-wide driveway leading to the house and other buildings on the easterly portion of the property.

In 1966 respondent Robert J. Rahill, on behalf of the state and in his capacity as Director of the Department of Transportation, filed plat 1351 condemning land contiguous to petitioner's parcel for construction of the main barrel of I-295 at the point of Route 44. As a result of this condemnation a highway was designated on the plat as the westerly boundary of petitioner's property. In 1972 plat 1353 was filed condemning the westerly portion (subject parcel) of petitioner's land for the completion of the interchange at I-295 and Route 44. This was the approximately 13.6-acre tract that abutted the state highway line demarcated by plat 1351. The new westerly boundary of the uncondemned portion of petitioner's property (remainder parcel), consisting of approximately 8.2 acres, was delineated on plat 1353 as a freeway line with no access to the remainder parcel.

Pursuant to G.L. 1956 (1977 Reenactment) §37-6-18, Fuller then petitioned the Superior Court for the assessment of damages resulting from the condemnation. At the trial Mr. Peter A. Laudati, Jr., an expert witness for petitioner, testified that the filing of plat 1351 and the resulting imposition of a highway line along the westerly boundary of petitioner's 22-acre parcel greatly enhanced the value of the property. He also stated that once the highway line was established, the state was obligated to furnish petitioner with ingress and egress to the highway. He further testified that as a result of the taking of the subject parcel under plat 1353, petitioner suffered severance damages due to the loss of frontage on the highway line and the resultant fronting of the remainder parcel on a freeway line without provision for access to the

freeway.[1] Mr. Laudati estimated that at the time of the condemnation in 1972 under plat 1353, petitioner's 22-acre tract was valued at $286,000,[2] and that the loss to petitioner occasioned by the condemnation was $194,200. This is the measure of damages that petitioner seeks. Mr. Laudati admitted, however, that were it not for the fact that plat 1351 imposed the state highway line as the westerly border of petitioner's original tract, his estimate of petitioner's loss would be only one-tenth of the $194,200 figure.

An expert witness for respondent, Mr. John R. McNally, testified that his precondemnation estimate of the value of the original tract with improvements was approximately $33,000 for its best use as commercial property, while the value of the property after condemnation was approximately $12,000. Under this appraisal the total damages were $21,000. In effect, Mr. McNally related that in appraising such property it was not necessary to consider the value of frontage on a state highway line because a line was not a state highway, nor did it obligate the state to build a highway in correspondence with the highway line.

The chief design engineer for the I-295 project in Rhode Island, Mr. Morris Chorney, testified that he participated in the 1962 public hearing, at which the public was informed that an interchange was proposed for the intersection of Routes 44 and I-295, although the exact location and design had not been determined. Mr. Chorney said that because the plans for the interchange were still incomplete in 1966 when plat 1351 was filed, that plat delineated the freeway lines of the main barrel of I-295 to points north and south of the proposed interchange. However, he stated that the area between these points, which would be used for the inter-

---

[1] Abutters to state highways have a right of access to such highways, *Honig* v. *Director of Public Works*, 106 R.I. 199, 258 A.2d 73 (1969), but there is no similar right of access for abutters of freeways. G.L. 1956 (1968 Reenactment) §24-10-1.

[2] The petitioner bought the property from Frank Love in 1968 for $17,500.

change, was marked by state highway lines because the exact plans for the interchange were not known and the state wanted to avoid placing two different sets of freeway lines, one tentative and one permanent, across the property of condemned landowners. Mr. Chorney related that the freeway lines in the interchange area were not indicated until plat 1353 was filed in 1972.

The trial justice found that as of 1962 the public had been apprised of the proposed interchange although plans were not then finalized regrading what property would be condemned for its construction. He found that because the location of the subject parcel was close to the area set aside for the proposed interchange in a diagram that was shown to the public at the 1962 hearing and introduced at trial as exhibit 11, the parcel was "under the shadow of a possible taking" as early as 1962. The trial justice held that the subject parcel was probably within the scope of the original I-295 construction project from the time the state was committed to the project, and that the property was not brought within the project by any "expansion, modification, or enlargement" of the original plan as it was detailed in 1962. Under these circumstances, the trial justice concluded that under the doctrine of *United States* v. *Reynolds*, 397 U.S. 14, 90 S. Ct. 803, 25 L. Ed. 2d 12 (1970), and *United States* v. *Miller*, 317 U.S. 369, 63 S. Ct. 276, 87 L. Ed. 336 (1943), in determining the fair market value of condemned property such as petitioner's that is within the probable scope of the original project, enhancement in value caused by the project may not be considered. The trial justice went on to state that plat 1351, which condemned property for the construction of the main barrel of I-295, did not include any plans for the interchange nor did it adopt as final the proposed plans for the interchange configuration contained in Exhibit 11. Thus the filing of plat 1351 did not remove petitioner's property from the "shadow of probable taking" that was cast at the 1962 hearing. The court evaluated the damages to petitioner as $21,000 the amount estimated by Mr. McNally. Judgment

was entered and petitioner appealed, contesting the amount of damages awarded in that judgment.

Both parties agree that this case is governed by the standards for valuing property condemned for public use as enunciated in *United States* v. *Miller, supra,* and as refined in *United States* v. *Reynolds, supra.* Both of those cases dealt with the issue we address today: whether the owner should benefit from any increment of value added to the property condemned by the action of the government in previously condemning adjacent property.

In *Miller* the Supreme Court stated:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The

owners ought not to gain by speculating on probable increase in value due to the Government's activities." *United States* v. *Miller,* 317 U.S. at 376-77, 63 S. Ct. at 281, 87 L. Ed. at 344.

In *Reynolds,* the Supreme Court explicated the *Miller* rule by noting:

"[It] does not require a showing that the land ultimately taken was actually specified in the original plans for the project. It need only be shown that during the course of the planning or original construction it became evident that land so situated would *probably* be needed for the public use." *United States* v. *Reynolds,* 397 U.S. at 21, 90 S. Ct. at 807-08, 25 L. Ed. 2d at 18 (emphasis added).

The petitioner in the instance case contends that the subject parcel was not "probably" within the scope of the I-295 project from the time the state was committed to that project, because plat 1351 condemned all the land needed for the interchange as the project had been envisioned up to that point and as explained to the public in 1962. Therefore, petitioner argues, the condemnation of petitioner's property under plat 1353 was an enlargement of the project and under the *Miller* rule she is entitled to the increment of value added to her property as a result of proximity to improvements occasioned by the project. These improvements consisted of the delineation by plat 1351 of the state highway line as the westerly boundary of her property.

The respondent insists that petitioner's property was "probably" within the scope of the project, and that therefore under the *Miller* rule petitioner is not entitled to an assessment of damages based on any increased valuation. We agree.

When we review a judgment rendered by a trial justice in a land condemnation proceeding where the trial justice has

served as the finder of fact, his findings are entitled to great weight and will not be disturbed unless the award was premised on application of an erroneous rule of law or on a misconception or disregard of the evidence. *Narciso v. State,* 114 R.I. 53, 328 A.2d 107 (1974); *Parillo v. Director of Public Works,* 112 R.I. 427, 312 A.2d 198 (1973). As we noted earlier, in refusing to assess damages based on enhanced valuation, the trial justice found as a fact that, under the *Miller* rule, the subject parcel was probably within the scope of the project from the time the state was committed to it in 1962 and that it was evident that the parcel would probably be needed for the project.

Our view of the record has failed to show that the trial justice misapplied the *Miller* rule, or that he misconceived or disregarded the evidence in making his findings. The record establishes that from 1962, the time of the initial public hearing, the public was informed of what was to be done generally in the area of the proposed junction of I-295 and Route 44. The public was put on notice by recorded testimony and by Exhibit 11 that the interchange would be in the area of Route 44 in the vicinity of petitioner's land and her land would probably be needed for the interchange, although the final design and the exact location had not yet been determined. No definite commitment was made as to the exact location of the interchange until the filing of plat 1353 in 1972, at which time petitioner's property was condemned.

Mr. Laudati, petitioner's own expert witness, testified at trial that Exhibit 11, a diagram containing a proposed configuration for the interchange, was merely a "preliminary plan" introduced to the public at the 1962 hearing. Mr. Chorney, state design engineer for I-295, testified that testimony at the 1962 hearing warned the public that the interchange would be built at the intersection of I-295 and Route 44, and that any property adjacent to Route 44 in that area, such as that of petitioner, was subject to condemnation for

the project. Mr. Chorney further testified that even after the filing of plat 1351 in 1966 and the consequent condemnation of property for construction of the main barrel of I-295, plans for the interchange were still indefinite. Thus, it was entirely reasonable for the trial justice to conclude that those lands designated at the 1962 hearing as probably within the scope of the project were not changed by any subsequent enlargement of the project because, until the filing of plat 1353 in 1972 condemning petitioner's property for the interchange, no definite plans had been formulated that would have taken the subject parcel out of the scope of probable taking as established in 1962.

We conclude, therefore, that the trial justice did not overlook or misconceive the evidence, nor did he premise his decision upon an application of an erroneous rule of law. Because of this disposition, we need not consider petitioner's assertion that delineation of the highway line by plat 1351 enhanced the value of her property. Under the *Miller* doctrine, petitioner's property was within the scope of the project from its inception. Therefore, even if its value was enhanced by the condemnation of adjacent land under the auspices of the project, that increased value cannot be considered in determining fair market value at the time of condemnation of the subject parcel because the owner is not entitled to benefit from the known fact that her property probably would be condemned.

Finally, in regard to the damages awarded, the petitioner's expert, Mr. Laudati, stated that without allowance for enhancement the damages would amount to only about one-tenth of their enhanced amount of $194,200, which would be $19,420. This figure is lower than the $21,000 awarded by the trial justice based on the estimate of Mr. McNally. The trial justice did not misconceive the evidence in arriving at this amount.

The petitioner's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Everett A. Petronio,* for petitioner.

*Stephen F. Mullen,* Chief Legal Counsel, Office of Special Counsel, Department of Transportation, for respondent.