Vincent A. BRUZZESE

v.

W. Edward WOOD et al.

No. 94–350–Appeal.

Supreme Court of Rhode Island.

April 17, 1996.

Dennis R. Gannon, Warwick, for Plaintiff.

Eugene Coulter, Newport, for Defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant, W. Edward Wood, in his capacity as the former director of the State Department of Transportation (DOT), from a Superior Court judgment entered against the DOT in favor of the plaintiff, Vincent A. Bruzzese (Bruzzese). For the reasons set forth below, we affirm the Superior Court judgment. The facts as pertinent to this appeal are virtually undisputed by the parties and are as follows.

During the 1970s and the early 1980s, the DOT together with the Federal Railway Administration identified and eliminated several street-level-grade railroad crossings at various locations throughout Rhode Island for the stated purpose of public safety. Effective on or about November 17, 1979, the grade crossing located at Kilvert Street in Warwick was eliminated. Prior to its elimination, Kilvert Street was a two-way thoroughfare that connected two main arterial highways: Post Road and Jefferson Boule-

vard.[1] Elimination of the grade crossing at Kilvert Street precluded vehicular traffic between Post Road and Jefferson Boulevard. The DOT then constructed the Coronado Street Overpass [2] to permit traffic to resume between the Post Road and Jefferson Boulevard highways. A short, narrow roadway presently connects old Kilvert Street to the Coronado Street Overpass.[3]

Bruzzese is the owner of a parcel of land located at 111 Kilvert Street, where he has operated a business known as Supreme Dairy since July 1969. The subject property is a one-story building approximately 12,618 square feet in size and is located in an area zoned as light industrial. Bruzzese owns and is president of Supreme Dairy, which manufactures cheeses and sells its products wholesale to restaurants and food stores on a cash-and-carry basis. The nature of Bruzzese's business is such that tractor-trailer trucks are frequently either delivering supplies or picking up products at two loading bays located on the premises.

On February 29, 1984, Bruzzese filed suit in the Superior Court against the DOT and the city of Warwick for damages. Although there was no physical acquisition of his property by the state, Bruzzese claimed damages as a consequence of the substantial diminution of reasonable access to his property which he alleged was caused following the elimination of the grade crossing at Kilvert Street and the construction of the Coronado Street Overpass.

The matter was heard by a Superior Court trial justice sitting without the intervention of a jury and commencing on July 6, 1993. Bruzzese testified that prior to the closing of Kilvert Street to traffic and the construction of the Coronado Street Overpass, vehicles entering onto his property could gain access easily. Vehicles attempting to enter onto his property from either Post Road or Jefferson Boulevard were able to travel along Kilvert Street and make one simple backing maneuver to gain access to the loading docks.

---

1. *See* appendix A.

2. The Coronado Street Overpass is also known as Relocated Kilvert Street.

3. *See* appendix B.

However, Bruzzese testified, after Kilvert Street was closed and the overpass was built, drivers of tractor-trailer trucks that were attempting to enter onto his property frequently had to ask employees of Supreme Dairy how to negotiate the entrance of the property with their vehicles. Bruzzese indicated that drivers were forced to trespass onto adjacent private property in order to back their vehicles onto his property.

By way of deposition, the court admitted the expert testimony of Frederick Hesketh (Hesketh), a civil engineer. A fellow of the Institute of Transportation Engineers and at one time the chief of road design for the DOT, Hesketh was familiar with the traffic and approach patterns in the subject area before Kilvert Street was closed and the Coronado Street Overpass was constructed.

Hesketh testified that in his opinion the access pattern to the loading dock of Supreme Dairy was much more complicated after the Kilvert Street project than the access pattern which existed when Kilvert Street was open to traffic. Hesketh opined that after the crossing was eliminated, vehicles were forced to undertake cumbersome U-turns or direct turning maneuvers that involved multiple starts and stops while moving forward and then backing up. Hesketh indicated that before Kilvert Street was closed, trucks could travel along Kilvert Street and make one simple backing maneuver by turning ninety-degrees toward the left to gain access to the loading dock. Relying upon his review of the roadway characteristics and access patterns available on Bruzzese's property, he opined that the construction of the intersection of Kilvert Street and Jefferson Boulevard had resulted in diminished access for employees, customers, and suppliers to Bruzzese's property. Without the courtesy of a neighbor that permitted truckers to maneuver their vehicles onto its property, Hesketh indicated, the construction would have effectively precluded servicing the receiving dock at the subject property.

Bruzzese also presented the expert testimony of Joseph Acetta (Acetta), a real-estate appraiser who had examined the subject property on at least six occasions. Acetta conducted an appraisal on August 13, 1992, utilizing the comparable-sales method of valuation and assessed the property both before and after the Kilvert Street project. He testified that based upon his review of comparable sales figures for five similar properties under similar conditions and adjusting for such differences as zoning, size, date of sale, age, and access, the value of the subject property before the relocation of Kilvert Street was $255,000.

Relying on Hesketh's findings, Acetta concluded that the subject property had been subject to a negative impact as a result of the relocation of Kilvert Street. He opined that the value of the subject property had lessened as a result of the diminished access and locational obsolescence which resulted after the Coronado Street Overpass was constructed. On cross-examination he indicated that before the Kilvert Street project, Bruzzese's property was enjoying its highest and best use as a wholesale distribution and processing operation. However, after the project, the property could most efficiently be used only for warehousing and processing because of the access problems, which he described as inefficient, inconvenient, and hazardous, requiring skilled drivers and a completely clear area for maneuvering. Moreover, he noted that after the Coronado Street Overpass had been constructed, accessibility and the site line for vehicular traffic was impaired for three reasons: (1) the slope of the grade of the connector was increased by 15 percent, (2) the grade of Kilvert Street was increased so that the slope to the south of the subject property is higher than the grade from Jefferson Boulevard on to Kilvert Street to the subject property, and (3) the connection interferes with the premises directly off Kilvert Street.

Acetta concluded that the value of the subject property had decreased from $255,000 by approximately 30 percent to a value of $151,000; therefore, Bruzzese had suffered damages in the amount of $104,000.

Testifying on behalf of the DOT was Frank Romeo (Romeo), an expert in traffic engineering who had conducted an analysis of the subject property. Romeo opined that the subject property did not suffer from access problems as a result of the Kilvert Street

project. Using truck-turning templates, Romeo demonstrated that tractor-trailer trucks were still able to access the subject property; however, after the Kilvert Street project successful access required four maneuvers by the driver instead of two. Romeo concluded that access from the surrounding street network was reasonable on the basis of the design of the Coronado Street, Jefferson Boulevard, and Kilvert Street intersection area and that there was a reasonable means for access to the loading area on the subject property once a truck accessed the property.

The DOT also offered the testimony of real estate appraiser William Coyle (Coyle), who had valued the subject property prior to the relocation of Kilvert Street at $230,000. Coyle's appraisal figure was also based upon the comparable-sales-method approach. It was Coyle's opinion that the changes to Kilvert Street did not diminish the value of the subject property and that, therefore, the aftervalue of the property remained at $230,000.

At the outset in rendering her bench decision, the trial justice dismissed the complaint as against the city of Warwick. The trial justice found that only the DOT could be held liable since the City of Warwick had absolutely nothing to do with the project other than to provide approval to the state pursuant to G.L.1956 § 24–6–1.[4] Bruzzese does not challenge that finding in the instant appeal.

In ruling in favor of Bruzzese, the trial justice specifically rejected the DOT's contention that the project did not have an adverse effect on the property and found that it had a substantial and significant negative impact on Bruzzese's utilization of, and thus,

the fair market value of his property. In considering the evidence presented, including various photographs, exhibits, and a view of the subject area, the trial justice observed that tractor-trailer trucks can no longer safely and efficiently gain access to the receiving docks on the subject property as a result of the Kilvert Street project. She accepted the testimony of Bruzzese's expert witnesses, Hesketh and Acetta, as completely credible and responsive to the physical alteration to the site. Judgment was entered in favor of Bruzzese in the amount of $104,000, on the basis of Acetta's appraisal of the diminution in value to Bruzzese's property.

Although it advances three separate issues in its appellate brief, the DOT's sole assertion on appeal is that the trial justice misconstrued the applicable case law in finding that Bruzzese had suffered compensable damages. It argues that the relevant theories of recovery do not support the trial justice's award of damages to Bruzzese and that, therefore, the judgment below must be vacated.

The parties agree that in closing the Kilvert Street grade crossing, the state was exercising its inherent police power in order to protect the public from harm. The single issue before us is whether the trial justice properly found that Bruzzese had suffered a compensable loss as a consequence of the DOT's closing of the Kilvert Street grade crossing and the construction of the Coronado Street Overpass. We find that the trial justice's award of damages was proper.

■ "[T]he standard of review of the findings of a trial justice sitting without the intervention of a jury is extremely deferen-

---

4. General Laws 1956 § 24–6–1 provides in part as follows:

  "**Order of abandonment—Reversion of title—Notice.**—Whenever, by the judgment of the town council of any town, a highway or driftway in the town, or any part of either, has ceased to be useful to the public the town council of the town is authorized so to declare it by an order or decree which shall be final and conclusive; and thereupon the title of the land upon the highway or driftway or part thereof existed shall revert to its owner, and the town shall be no longer liable to repair the highway or driftway; provided, however, that the town council shall cause a sign to be placed at each end of the highway or driftway, having thereon the words 'Not a public

highway', and after the entry of the order or decree shall also cause a notice thereof to be published in a newspaper of general circulation, printed in English at least once each week for three (3) successive weeks in a newspaper circulated within the city or town and a further and personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned who is known to reside within this state but nothing herein contained shall in any manner affect any private right-of-way over the land so adjudged to be useless as a highway or driftway, if the right had been acquired before the taking of the land for a highway or driftway."

tial." *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill et al,* 652 A.2d 440, 443 (R.I.1994). "[The] resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference." *Warwick Musical Theatre Inc. v. State,* 525 A.2d 905, 909–10 (R.I.1987). We shall not disturb the findings of the trial justice on appeal unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Clark–Fitzpatrick, Inc.,* 652 A.2d at 443 (citing *Cerilli v. Newport Offshore Ltd.,* 612 A.2d 35 (R.I.1992)).

This court has described a property owner's right of access as an easement appurtenant to land abutting a public highway that "not only affords the abutting owner with a reasonable opportunity to enter and leave his [or her] property through the use of the abutting way but also insures that once the abutter arrives on that way he can proceed from there to the general system of roadways." *Saints Sahag and Mesrob Armenian Church v. Director of Public Works,* 116 R.I. 735, 740–741, 360 A.2d 534, 537 (1976); *Narciso v. State,* 114 R.I. 53, 64, 328 A.2d 107, 112–13 (1974); *Sullivan v. Marcello,* 100 R.I. 241, 246, 214 A.2d 181, 184 (1965).

■ This court subscribes to the general rule "that where, in an exercise of police power, the right of access to land abutting upon a highway is impaired or diminished, such act is not confiscatory taking requiring compensation unless the impairment or diminution is so substantial as to leave the property owner without reasonable access to his [or her] property." *Narciso,* 114 R.I. at 59, 328 A.2d at 110. "The determination of whether a 'substantial impairment' has been established is a question of law, while the extent of such impairment is a question of fact." *Id.* at 60, 328 A.2d at 110. Prior to an assessment and award of damages, there must be a finding that a substantial impairment of access to the abutting highway exists. *Id.* The proper measure of awarding damages for the destruction or impairment of access "is the difference between the market value of the property before and immediately after the destruction or impairment of access." *Narciso,* 114 R.I. at 60–61, 328 A.2d

at 111. A landowner is entitled to the difference in value of the remaining property before and after the access thereto has been destroyed or impaired, not upon the value of the right of access to the highway. *Id.* at 61, 328 A.2d at 111. In turn, this valuation is premised upon the highest and most optimal use to which the land at issue might be put before and after the right of access was destroyed or impaired. *Id.*

■ Applying these principles to the case before us, we are persuaded that the record supports the trial justice's award of damages to Bruzzese. The facts of this case fall squarely within the rule of *Narciso.*

Although the trial justice did not specifically indicate that the DOT's actions "substantially impaired" Bruzzese's right of access to the abutting roads, the record indicates that the trial justice made the initial determination that the closing of Kilvert Street and the construction of the Coronado Street Overpass "had a substantial and significant impact on [Bruzzese's] utilization of and thus the fair market value of his property." In reaching this determination, the trial justice thoroughly examined the evidence presented. The trial justice specifically noted and accepted the testimony of Bruzzese's witnesses, Acetta and Hesketh. The trial justice further observed that before the Kilvert Street project, Bruzzese was enjoying the highest and best use of the property as a wholesale distribution and processing operation but that following the alteration the property's use was limited to warehousing and processing. In finding that Bruzzese suffered a compensable loss, the trial justice explicitly rejected the DOT's contention "that the alteration of Kilvert Street had no adverse effect on Mr. Bruzzese's property."

Relying upon all the evidence presented, the trial justice was persuaded that tractor-trailer trucks could no longer safely and effectively gain access to the delivery docks located on the subject property and that, therefore, the access to Bruzzese's property was impaired as a result of the elimination of the grade crossing at Kilvert Street and the construction of the Coronado Street Overpass.

We are of the opinion that the method employed by the trial justice in awarding damages for the impairment of access suffered by Bruzzese was proper. The measure of damages awarded by the trial justice to Bruzzese for the impairment of access to his property was the difference between the market value of the property before and immediately after the impairment of access. In this case the difference in value was $104,-000 as assessed by Bruzzese's real estate appraiser, Acetta. We find no error in the trial justice's award of damages.

For these reasons the DOT's appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers of the case are remanded to the Superior Court.

FLANDERS, J., did not participate.

## APPENDIX A

## APPENDIX B

