DECISION
On July 14 and 16, 1997, the Court, sitting without a jury, heard the first phase of the trial of this action brought by Plaintiffs, Robert LaFerriere, L L Associates (hereinafter "plaintiffs") and R R Associates[1] against defendants, City of Providence and Providence Water Supply Board (hereinafter the "City") essentially alleging a taking and a breach of contract arising out of certain water rights taken for the creation of what is now the Scituate Reservoir. This proceeding served as an expedited hearing for the declaratory relief sought by the plaintiffs, as well as a trial of the liability portion of plaintiffs' counts for breach of contract and unlawful taking against the City. This Court possesses jurisdiction over this matter pursuant to R.I.G.L. 8-2-14 and R.I.G.L. 9-30-1, et seq.
 Facts/Travel
Plaintiffs own land adjacent to the north branch of the Pawtuxet River, downstream from what presently serves as the Scituate Reservoir. Plaintiffs allege that the General Assembly, through P.L. 1915, ch. 1278, (hereinafter the "1915 Act") authorized the City of Providence to develop the Scituate Reservoir and created the Providence Water Supply Board to regulate that reservoir. The 1915 Act authorized the City to acquire by condemnation certain waters of the Pawtuxet River in connection with the creation of the reservoir.
As authorized by the 1915 Act, the Providence Water Supply Board did, in fact, condemn certain water on the north branch of the Pawtuxet River. The Hope Company, B.B. R. Knight, Inc. and Interlaken Mills (hereinafter the "mill owners") owned land along the north branch of the Pawtuxet River at the time of the condemnation. These mill owners claimed that their status as riparian landowners gave them a right to take water in the river and to expect a minimum flow of water in that river. Accordingly, they claimed that the City owed them compensation for the condemnation and "taking" of their water rights. On September 1, 1922, the Providence Water Supply Board and the riparian mill owners entered into a contract (hereinafter "1922 Contract") to settle those claims for compensation. Plaintiffs in this action allege that they are successors-in-interest to those riparian mill owners. Since the 1922 Contract, the General Assembly has amended the 1915 Act several times.[2] Each amendment names additional municipalities who may take and receive water from the Scituate Reservoir.
Plaintiffs filed the original complaint in this action against the defendants, City of Providence and Providence Water Supply Board, alleging that plaintiffs may recover for a breach of the 1922 Contract and for successive condemnations of water on the Pawtuxet River. Specifically, plaintiff's third amended complaint alleges Counts I and II for breach of contract, Counts III and IV for unlawful taking, and Count V for declaratory relief. Plaintiffs claim that each time the General Assembly amended the 1915 Act to specifically entitle an additional geographic area with the "right to take and receive" water from the Scituate Reservoir, a "taking" of the water rights of the plaintiffs' predecessors-in-interest occurred, resulting in damages recoverable by plaintiffs.
The City filed a third-party complaint to implead, as third-party defendants, the State of Rhode Island and all of the municipalities allowed to take and receive water by the amendments to the 1915 Act. The City, in its' third-party complaint, alleges that the municipalities owe indemnification and contribution for all or part of plaintiffs' claims against the third-party plaintiffs. On July 11, 1997, this Court granted the municipalities' motion for summary judgment when the Court held that the third-party municipalities did not owe the original plaintiffs under either a contract theory or a condemnation theory of recovery.
At the July 14, 1997 proceeding to determine liability, the parties agreed to the admission of certain documents, including the relevant public laws and the 1922 Contract. (See Ex. J1-J3m). Furthermore, the Court admitted, in full, certain documents offered by the plaintiff which documented the partnership agreement between the plaintiffs as well as the chain of title to certain of the riparian mill land and purported to establish the present plaintiff's ownership of it. (See Ex. P1-P11). In addition, the Court admitted map of the reservoir area as well as the condemnation documents including the 1916 Resolution by the City Council and the 1916 Statement of Lands Taken. (See Ex. D-ab, aj). The Court also admitted, in full, certain releases signed by mill owners in connection with the 1922 Contract (See Ex. D-ad — D-af) as well as proof of notice to the class members of this action (See Ex. D-ak, D-al). In addition to these documents, the plaintiffs offered the testimony of Robert Laferriere and expert witness and title examiner John B. Murphy. In opposition, the defendant offered the testimony of Mary Spagnoli, Michael Russo, Robert Kilduff and expert witness and title examiner George E. Manley.
At the proceedings, the Court accepted certain exhibits into evidence for identification only. (See Ex. D-c — D-aa, D-ac, D-ai, D-ag, D-ah, D-am — D-ax). The defendant sought to admit these exhibits in full in order to prove the parties' intent when entering into the 1922 Contract and to prove legislative intent for the 1915 Act and its amendments. In a decision issued from the bench on October 2, 1997, the Court declined to admit these exhibits because it determined that the contract, the condemnation documents, and the Act contained terms that did not require the admission of extrinsic evidence for their interpretation. (10/2/97 Hearing).
The parties chose to submit post-trial briefs in lieu of closing arguments. In its memorandum, the plaintiff argues that the City originally condemned only part of the Hope Company's water rights in the north branch of the Pawtuxet River. The plaintiff further cites language from Article 1, Article 6 and Article 16 of the 1922 Contract which, plaintiff states, acknowledges that not all of the mills' rights were taken under the 1915 Act. Specifically, the plaintiffs argue that they retained a right to all of the monthly quantity of water from the Scituate Reservoir which was not used to supply water to the City of Providence or the other territories specifically listed in Section 6 and Section 18 of the 1915 Act. Furthermore, the plaintiffs contend that the City breached the 1922 Contract with them each time it supplied water to other territories because that supply constituted a taking for which the 1922 Contract did not compensate. The plaintiffs seek a declaration from this Court of the effect that the 1915 Act and the 1922 Contract had upon the mill owners water rights in and to the Pawtuxet River. The plaintiffs petition this Court to declare, inter alia, that (1) the 1922 Contract recognizes that the mill owners retained water rights in the Pawtuxet River; (2) that the Section 6 of the 1915 Act gave the mill owners a right to all of the water not utilized to supply water to entitled territories (hereinafter sometimes "surplus water"); (3) that the Contract reserved the mill owners rights under Section 6; (4) each time the City diverted water for use in territories listed in amendments to Section 18, it effectuated a taking of the mill owners' rights to the surplus water.
In opposition, the defendants, City of Providence and Providence Water Supply Board maintain, essentially, that the 1915 Act authorized and the 1916 condemnation documents effectuated a taking of plaintiffs' water rights subject to certain paramount limitations and minimum flow requirements. The defendants argue that neither the legislature in the Act, nor the City in the Statement of Taking, subjected the taking of water rights to any right by the plaintiffs to take and receive surplus water in the north branch. The defendants further contend that the condemnation instruments determine the extent of the taking, and they place no territorial limitations or restrictions upon the City's ability to supply water to other territories in the future.
 The 1915 Act
Because the plaintiffs base their claim for retained water rights in Section 6 of the 1915 Act, this Court begins its discussion with an analysis of the text of Section 6.
This Court is mindful that its task in construing any statute is to effectuate and establish the intent of the legislature. In re Advisory Opinion to the Governor, 504 A.2d 456
(R.I. 1986). When the language of a statute is clear and unambiguous and conveys a definite and sensible meaning, the Court must interpret the statute literally and must give the words their plain and ordinary meaning. Dart Industries, Inc. v.Clark, 606 A.2d 306 (R.I. 1997). The Court must presume this literal meaning to be the one intended by the Legislature.Exeter-West Greenwich Regional School District v. Pontarelli,460 A.2d 934 (R.I. 1983). Public Law 1915 ch. 1278 "An Act to Furnish The City of Providence with a Supply of Pure Water" establishes the Providence Water Supply Board and empowers the board to acquire, in the name of the City, "such lands and such estates, easements, rights and interests therein, and such waters and water and flowage rights and privileges and rights to hold and take water, as are necessary or desirable for such water supply * * *." P.L. 1915, ch. 1278, Section 3. Section 5 of the Act authorizes the City of Providence "to acquire by condemnation any lands, improved or unimproved, and any estates, easements rights and interests in any lands . . . and any . . . water and land ways, and waters connected therewith or incidental thereto" in order to create, maintain and preserve the water supply of the reservoir. Section 6 of the Act specifically authorizes the City of Providence to acquire certain waters by condemnation and reads, in pertinent part:
 Sec. 6. Said city of Providence is hereby authorized from time to time and in the manner hereinafter provided to acquire absolutely by condemnation, the waters of said branch of said river and its tributaries, or any part or parts thereof . . . and any water or flowage rights or privileges appurtenant to or connected with said area, or any part or parts thereof, and any waters flowing into such reservoir or reservoirs, and to there hold such waters and to appropriate and divert the same for such water supply
* * * and further provided, that after said city has for the first time held and stored in such reservoir or reservoirs twenty billion gallons of water, it shall draw from such reservoir or such of said reservoirs as is farthest down stream, in each month a quantity of water equivalent to not less than seventy million gallons daily, and all of the above monthly quantity of water which is not diverted for a water supply for said city of Providence, and for any territories now supplied, or hereafter supplied under the provisions of this act, in the city of Cranston, the towns of North Providence, Johnston and Warwick, or elsewhere,
shall be discharged into said branch above the dam of the Hope Mills, so-called in the town of Scituate * * *
(emphasis added).
Further in Section 6, the legislature specifically subjected the city's rights in the water to certain "paramount limitations" which required the city to ensure certain water flowage at the lowest dam, the Arkwright dam and Clyde Bleachery. R.I. Pub. Laws 1915, ch. 1278, Section 6. The plaintiffs, however, do not premise their claim for relief upon any violation of these "paramount limitations." Rather, the plaintiffs premise their claims upon two passages of Section 6 of the 1915 Act. First, they allege that the above-referenced language that "all of the above monthly quantity of water which is not diverted for a water supply . . . shall be discharged into said branch" confers upon them a right to all water not used to supply water to those territories specifically listed in the 1915 Act. Second, they contend that the words in Section 6 of the 1915 Act "now supplied, or hereafter supplied under the provisions of this act" limits the City's right to supply water "only to the City of Providence, territories already serviced by the City prior to the enactment of the Original Act, and other territories entitled to water under Section 18 of the Original Act at the time of its enactment." (Pl. brief p. 9-10). Plaintiffs conclude that each time the City supplied water to territories other than those listed in Section 18 as written in 1915, the City unlawfully took surplus water away from its rightful owners, the plaintiffs, and sold it to unentitled municipalities. This Court finds that these textually-based arguments for relief are misplaced.
Considering plaintiffs' claim in light of its first argument, a careful review of the text of Section 6 reveals that the legislature did not intend to confer a right to surplus water onto the plaintiffs. In ascertaining the meaning of this text, this Court may consider both the arrangement of provisions in the Act, In re Advisory to the Governor, 668 A.2d 1246 (1996), and compare the language relied upon by the plaintiff to other language in the Act. East Shore Land Co. v. Peckham, 82 A. 487
(R.I. 1912). This Court notes that the language relied upon by the plaintiff that surplus water "shall be discharged into said branch" differs significantly from the words used in the section which actually confers a right to water upon municipalities. (See P.L. 1915, ch. 1278 at Section 18, providing, for example, that "* * * said town of Scituate * * * shall have the right to take and receive water"). Accordingly, had the legislature intended to give the plaintiffs a "right to take and receive" surplus water, it would have so stated. The mere fact that the plaintiffs would benefit from water "discharged into said branch" does not give rise to a right to that water so discharged. This Court is not free to extend the meaning of a statutory term or phrase such as "discharged into said branch" in order to effectuate an alleged unexpressed intent Campanella Corporation v. Zoning Board ofReview of the Town of Middletown, 261 A.2d 644 (R.I. 1970). accordingly, this Court is not free to extend the meaning of this language to confer upon plaintiffs a right to take and receive surplus water. As a matter of law, this language in Section 6 does not confer upon the plaintiffs a right to surplus water. Furthermore, an examination of the entire text of Section 6 reveals that it does not contain any clear language to limit the City's authority "to acquire absolutely by condemnation, the waters of said branch" by exempting from condemnation plaintiffs' claimed rights. Therefore, the Act does not entitle plaintiffs to any right to retain surplus water, regardless of any incidental benefit to plaintiff from water "discharged into said branch."
This Court now considers the language of Section 6 of the 1915 Act in light of the plaintiffs' second textually-based argument. Plaintiffs' claim that the words in Section 6 "now supplied, or hereafter supplied under the provisions of this act" limits the City's right to supply water "only to the City of Providence, territories already serviced . . . and other territories entitled to water under Section 18 of the Original Act at the time of its enactment." (Pl. brief p. 9-10). This Court also finds this textual argument to be misplaced. Contrary to plaintiffs' assertions, an examination of the text of Section 6 reveals that the city had a right to supply water to the municipalities listed in the amendments to Section 18. If the legislature had intended to limit the territories to which the city could supply water, it would not have included the phrase "now supplied or hereafter supplied" without qualification. "Hereafter" is defined as "a word of futurity, used in statutes and legal documents as indicative of future time, excluding both the present and the past." Black's Law Dictionary, sixth edition (1990); see also Baker v. Retirement Bd. of Allegheny Country,97 A.2d 231, 234, 374 Pa. 165, (`hereafter' when used as an adverb in a statute refers only to some future time or state); Grismorev. State, Tex. App. — Eastland, 841 S.W.2d 111, 113 (`hereafter' indicates future time and excludes both present and past).[3] In light of this plain and ordinary meaning given to `hereafter,' to construe section 6 as prohibiting the city from supplying water to territories listed in the amended versions of Section 18 would render `hereafter,' as well as `elsewhere' nullities and would contravene the well-settled canon of statutory construction that "a statute should * * * be construed to avoid rendering sentences, clauses, or words as mere surplusage." See Providence Journal Co. v. Rodgers, 1998 WL 268305 (R.I. 1998), citing Knaggs v. Clark, 686 A.2d 466, 469 (R.I. 1996). Furthermore, an examination of the language of the 1915 Act reveals no language which limits or restricts the City's right to subsequently supply water to other territories. Therefore, this Court presumes that this Act contemplates the city supplying water to other territories in the future. Since the 1915 Act contemplates the sale of water to these municipalities, the City's sale of water is lawful and the water so supplied is included within the water "hereafter supplied" in Section 6 of the 1915 Act.
Accordingly, contrary to plaintiffs' argument, section 6 of the 1915 Act does not confer any right upon the plaintiffs to take or receive surplus water that would conflict with the City's ability to supply water to other municipalities, nor does the 1915 Act prevent the City from supplying water to other municipalities. Notwithstanding the fact that the legislature authorized the City "acquire absolutely by condemnation, the waters of said branch" subject to certain paramount limitations, this Court must examine the condemnation documents to determine whether the City exempted plaintiffs' alleged right to surplus water flow from its actual condemnation of the water of the north branch.
 The Condemnation Documents
While the 1915 Act determines the extent of the City's authority to condemn, the condemnation documents and the Statement of Taking define the extent of the land or water rights actually taken. In Rhode Island, it remains well-settled that the extent of what the condemning authority actually takes by condemnation is determined by what is contained within the "four corners" of the condemnation documents. Kentucky Fried Chicken ofWarren, Inc. v. Flanders, 461 A.2d 927, 928 (R.I. 1983). The Rhode Island Supreme Court set forth this principle in the often-quoted Sullivan v. Marcello, 100 R.I. 241, 252,214 A.2d 181, 186 (1965), where it stated:
 "* * * we turn to the condemnation instruments for its is within their four corners, and only there, that we can ascertain what was acquired and other than as provided by statute what, if any, limitations or restrictions on the use thereof were assumed."
Furthermore, the extent of the taking is determined at the time of the taking. Id.; Honig v. Director of Public Works for theState of R.I., 106 R.I. 199, 258 A.2d 73 (1969).
In the matter at bar, on December 4, 1916, the City Council of the City of Providence passed Resolution 397 which approved the condemnation of certain lands pursuant to P.L. 1915 ch. 1278, Section 23. On December 6, 1916, the City filed the Statement of Taking[4] in the offices of the appropriate town clerks. Because this Court must determine the extent of this taking at the time of the statement's filing, it follows, as a matter of law, that the extent and nature of the water rights and water flow taken, this Court must examine the language of the Statement of Taking actually filed on December 6, 1916. The material portions of the Statement of Taking read:
 "* * * said City of Providence makes the following Statement that it has elected to take and takes, and the same are taken pursuant to the provisions of said Act, for the purpose or purposes hereinafter specified, all the lands, and estates, easements, rights and interest in lands, and waters, water rights and privileges, hereinafter described, and title therein of the nature or to the extent hereinafter specified, viz:
 * * *
 TWELFTH: All the waters of said north branch of said Pawtuxet River and its tributaries, included within any and all said lands and parcels of land hereinbefore taken and situated within said area of land hereinbefore described . . . and any and all water and flowage rights and privileges appurtenant to or connected with said lands an parcels of land, and any and all waters flowing into said storage reservoir, with the right to holds all said waters and to appropriate and divert the same for said water supply and the water supply purposes specified in said Act, except as hereinafter set forth and provided, and subject to all of the conditions, limitations, restrictions, reservations, obligations and requirements relative thereto or any thereof specified in said Act, and especially in Section 6 thereof, and especially subject to the following provisos:
The provisos which follow the above passage in the Statement of Taking are, in all material respects, identical to those listed in Section 6 of the 1915 Act as discussed infra. . Significantly, after listing the minimum quantity of water to be taken by the City, Section Twelfth reads:
 "* * * and all the above monthly quantity of water which is not diverted for a water supply for said City of Providence, and for any territories supplied on the date of the passage of said Act, or thereafter supplied under the provisions of said Act, in the City of Cranston, the towns of North Providence, Johnston and Warwick, or elsewhere,
shall be discharged into said branch above the dam of the Hope Mills * * *"
Applying the established rules of construction discussedinfra to this Statement of Taking, this Court recognizes that the City took "All the water of said north branch of said Pawtuxet River" with certain exceptions. After examining these "exceptions" and, especially, the above-referenced passage, this Court finds no language which confers upon the plaintiffs a right to take and receive water in the north branch; nor does this Court find any language which specifically exempts from condemnation any of the plaintiffs' rights as riparian owners to water flow, beyond the "paramount limitations." Indeed, the plain and ordinary meaning of the passage indicates that the City could have used all of the water, except for the minimum flowage set forth in the "paramount limitations," to supply water to "any territories * * * thereafter supplied," without qualification. Therefore, because section Twelfth indicates that the City took "all the waters," and because none of the limitations or requirements in that section confer upon plaintiffs a right to take and receive water, this Court finds that, as of the date of the taking, the plaintiffs' legal right to water or water flow in the north branch of the Pawtuxet River had been taken by the city and therefore, they had no right to any water or surplus water flow as of that date. Accordingly, it follows that the legislature's subsequent amendment of Section 18 of the 1915 Act did not damage plaintiffs' alleged rights to water, because plaintiffs did not, in fact, possess any such rights to surplus water.
 The 1922 Contract
The plaintiffs assert that the 1922 Contract recognizes their right to surplus water in the north branch. This Court finds that this argument lacks merit. In support of their argument, the plaintiffs rely upon certain language of the 1922 Contract which preserve certain of the mill owners' rights under Section 6 of the 1915 Act. These provisions provide, in pertinent part:
 [Article 1]: "The Mills will * * * each release unto the City all its claims for damages recoverable in the condemnation proceedings * * * under the provisions of said Chapter 1278 of the Public laws for the taking of its waters, water rights an privileges * * *, and of any other damages direct or consequential secured to it under said Chapter * * * excepting and providing, however, that each Mill does hereby reserve and except and will reserve and except in its said release * * * (b) all its claims, rights and remedies now or hereafter accruing under the provisions of Section 6 of said Chapter 1278, in so far as they relate to the waters and water rights excepted from condemnation
or reserved or guaranteed to the Mills, or condemned subject to such rights and guaranties * * *"
 * * *
 [Article 6]: "* * * provision of this article shall not limit or impair the rights of the Mills, or any of them, under the provisions of Section 6 of said Chapter 1278 of the Public Laws."
 [Article 7]: "[t]he provisions of this Article shall not limit or impair the rights of the Mills, or any of them, under the provisions of Section 6 of said Chapter 1278 of the Public Laws."
 [Article 16]: "[all rights of the Mills under the provisions of said Chapter 1278 of the Public Laws, except to any extent modified by this agreement, shall be an remain in full force and effect."
(emphasis added).
A careful examination of the above-referenced language, as well as the full text of the 1922 Contract reveals that the contract does, indeed preserve certain of the mill owners' rights under Section 6 of the 1915 Act. However, the mere fact that the contract acknowledges the paramount limitations of Section 6, and other minimum flowage requirements through 1955, cannot and does not affect the nature or the extent of the taking of water by the city which occurred on December 6, 1916. See Sullivan v.Marcello, infra. . The plaintiffs do not allege, nor does the test of the Contract support a claim that the 1922 Contract enlarges the exemptions from condemnation listed in Section 6 of the 1915 Act. Plaintiffs' entire claim for breach of contract is dependent upon their rights as secured under Section 6 of the 1915 Act. Because this Court has determined that the plaintiffs have no rights to the water discharged downstream beyond those listed as paramount limitations, and because the plaintiffs do not allege violations of those paramount limitations or other minimum flowage requirements, this Court finds that the City's supplying of water to municipalities and other entities pursuant to amendments to Section 18 of the 1915 Act does not constitute a breach of the 1915 Contract.
 Conclusion
In conclusion, after considering all of the evidence and testimony before it, as well as carefully reviewing the legal authority submitted by both parties in their post-trial memoranda, and for all of the reasons discussed herein, this Court finds that the plaintiffs have failed to prove, by a preponderance of the evidence, that they were entitled to the `surplus' water in the north branch of the Pawtuxet River not used by the City to supply certain territories with water pursuant to the 1915 Act. The plaintiffs have failed to prove that the defendant City's actions in supplying water to municipalities pursuant to amendments to Section 18 of the 1915 Act constitute either an unlawful taking or a breach of the 1922 Contract. This Court concludes that the defendants' sale of water to municipalities pursuant to amendments to Section 18 of the 1915 Act does not constitute an unlawful taking, nor does it constitute a breach of the 1922 Contract. Accordingly, because this Court finds that the defendants are not liable to the plaintiffs under either theory of recovery, this Court summarily dismisses the defendants' third-party complaint for indemnification and contribution.
Counsel shall submit the appropriate judgment for entry.
[1] Although the trial began as a claim brought by all plaintiffs, including R R Associates, at the trial, the court dismissed R R Associates as a party plaintiff. Accordingly, the designation "plaintiffs" throughout this decision refers to L L Associates and Robert LaFerriere.
[2] The General Assembly has amended P.L 1915 ch. 1278, section 18 through P.L. 1931, ch. 1815; P.L. 1932, ch. 1966; P.L. 1936, ch. 2316, P.L. 1963, ch. 158; P.L. 1963 ch. 5; P.L. 1967, ch. 162; P.L 1984, ch. 442; P.L. 1985, ch. 54; and P.L. 1986, ch. 84.
[3] Hereafter carries a different meaning from the term "hereinafter" which courts have defined as embracing "all that follows" in the text. Duggan v. Davey, 26 N.W. 887, 893, 4 Dak. 110.
[4] In this decision, this court designates as the "Statement of Taking" the document entitled "Statement of Lands, and Estates, Easements, Rights and interests in Lands, and Waters, Water Rights and Privileges, Condemned by the City of Providence under Chapter 1278 of the Public Laws, Passed at the January Session, A.D. 1915, and by resolution of the City Council of said City Numbered 397 and Approved December Fourth, 1916."